T.C. Memo. 2011-300

UNITED STATES TAX COURT

ALPHA DIALLO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21796-09.                    Filed December 29, 2011.

Alpha Diallo, pro se.

<u>R. Jeffrey Knight</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Judge</u>:  Respondent determined deficiencies in petitioner's 2005, 2006, and 2007 Federal income taxes of $16,069, $16,602, and $7,247, respectively.  Respondent further determined penalties pursuant to section 6662(a) of $3,214,

$3,320, and $1,449 for tax years 2005, 2006, and 2007, respectively.[1]

The issues for decision are: (1) Whether petitioner underreported gross receipts from his limousine driving business as respondent has determined; (2) whether respondent properly disallowed certain deductions with respect to this business; (3) whether petitioner is entitled to dependency exemption deductions for one dependent in tax years 2005 and 2006 and two dependents in tax year 2007; (4) whether petitioner is entitled to head of household filing status; and (5) whether petitioner is liable for accuracy-related penalties pursuant to section 6662(a).

## FINDINGS OF FACT

The parties have stipulated some facts, which we incorporate by this reference. When he petitioned the Court, petitioner resided in Maryland.

During the years at issue petitioner was self-employed as a limousine driver. He owned no vehicle other than the one he used in his business. Sometimes he used this vehicle for personal purposes.

During the years at issue petitioner's sister-in-law and his niece, R.D., who was born in 2004, resided with him at his

---

[1]All section references are to the Internal Revenue Code for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts have been rounded to the nearest dollar.

residence.[2]  In 2006 another niece, S.D., was born, and she also resided with petitioner at his residence.  Petitioner's brother, who is the father of R.D. and S.D., lived in Africa.  To assist with the care of his children, petitioner's brother provided petitioner financial support and helped buy petitioner's house.

On his Federal income tax returns for 2005, 2006, and 2007, petitioner claimed head of household filing status.  For 2005 and 2006, he claimed R.D. as his dependent.  For 2007 he claimed both R.D. and S.D. as dependents.  On Schedules C, Profit or Loss From Business, petitioner reported gross receipts from his limousine driving business of $18,027, $21,271, and $35,611 for 2005, 2006, and 2007, respectively.  He claimed total Schedule C business expenses of $9,975, $12,481, and $22,944 for 2005, 2006, and 2007, respectively.

In the notice of deficiency respondent determined that petitioner's proper filing status was single and that he was entitled to no dependency exemption deductions.  Using the bank deposits method, respondent determined that petitioner had underreported his Schedule C gross receipts by $41,333 for 2005 and by $39,981 for 2006.  Respondent also disallowed, for lack of substantiation, some of petitioner's Schedule C expenses; the

---

[2]The Court refers to minors by their initials.  See Rule 27(a)(3).

disallowed deductions totaled $4,269, $6,491, and $16,655 for 2005, 2006, and 2007, respectively.

OPINION

## I. Schedule C Gross Receipts

If a taxpayer fails to keep adequate records, the Commissioner may reconstruct the taxpayer's income by any reasonable method that clearly reflects income. Sec. 446(b); see Holland v. United States, 348 U.S. 121, 130-132 (1954). One acceptable method is the bank deposits method. Clayton v. Commissioner, 102 T.C. 632, 645 (1994); DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Bevan v. Commissioner, T.C. Memo. 1971-312, affd. 472 F.2d 1381 (6th Cir. 1973). This method assumes that if a taxpayer is engaged in an income-producing activity and makes deposits to bank accounts, then those deposits, less amounts identified as nonincome items, constitute taxable income. See Clayton v. Commissioner, supra at 645-646.

Respondent reconstructed petitioner's gross income for 2005 and 2006 using the bank deposits method. Respondent's analysis showed aggregate deposits into petitioner's accounts of $59,360 for 2005 and $61,252 for 2006, all of which respondent has included in petitioner's gross income. Petitioner bears the burden of showing that these determinations are incorrect. Rule

142(a); see <u>DiLeo v. Commissioner</u>, <u>supra</u> at 871; <u>Bevan v. Commissioner</u>, <u>supra</u>.[3]

Petitioner does not dispute making these deposits. He contends, however, that they include certain nontaxable amounts; namely a $25,000 cash hoard that he allegedly brought with him when he moved to the United States in 1994, as well as other indeterminate sums that he claims to have accumulated from his employment as a limousine driver from 1994 until 2004. Petitioner alleges that before 2005 he kept all these moneys in his house instead of a bank because he feared that if the bank went broke he would lose everything. But he also testified that in 1999 he learned of Federal deposit insurance, which guarantees the security of deposits in member banks. In the light of this testimony, it is difficult to understand why he would have made these deposits in 2005 and 2006, and not before.

Moreover, petitioner's self-created profit and loss statements, which are in evidence, strongly discredit his testimony and in fact tend to support respondent's determinations as to his gross receipts for 2005 and 2006.[4] Taking into account

---

[3]Petitioner does not contend and the record does not suggest that the burden of proof should shift to respondent pursuant to sec. 7491(a).

[4]Petitioner's self-created profit and loss statements show gross receipts of $55,746 for 2005 and $56,338 for 2006.

a number of inconsistencies in petitioner's testimony, we do not find it credible or plausible.

Petitioner has failed to establish that any of the unexplained amounts deposited in his accounts represent nontaxable items. Accordingly, we sustain respondent's determinations as to this issue.

II. Schedule C Deductions

Section 162(a) allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Taxpayers must maintain records sufficient to establish the amount of their income and deductions. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs. In general, no deduction is permitted for personal, family, or living expenses. Sec. 262. If a taxpayer establishes a deductible expense but is unable to substantiate the precise amount, the Court may approximate the deductible amount, but only if the taxpayer presents sufficient evidence to establish a rational basis for making the estimate. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).

The record provides no credible evidentiary basis to support petitioner's claimed deductions beyond the amounts that respondent has allowed. Although petitioner introduced into evidence copies of numerous receipts, they cannot be readily correlated with the deductions he has claimed. The receipts

include expenditures for many personal items, such as games, bedding, and food. Similarly, although petitioner presented evidence of about $1,500 in fuel expenditures, they appear to cover both personal and business use of his automobile.[5] Petitioner has failed to prove that he is entitled to Schedule C deductions greater than those respondent has permitted.

We sustain respondent's determinations with respect to petitioner's Schedule C deductions.

III. Dependency Exemption Deduction

A taxpayer may claim a dependency exemption deduction with respect to an individual who is either a "qualifying child" or a

---

[5]Petitioner's testimony in this regard, as in other regards, was inconsistent and unreliable. He first testified that he could not recall how many miles he drove for personal purposes. Then he testified that he did not use the automobile for personal purposes except to "stop for groceries". Petitioner stated that when he needed a car for personal reasons, he would rent a car. This testimony is rendered less credible by petitioner's subsequent admission that he drove his automobile to the trial. Ultimately, petitioner testified that he used his automobile 90 to 95 percent for business purposes but acknowledged he had no documentation to support this allocation.

In the event, as seems likely, that "substantially all" of petitioner's use of the limousine was not "in a trade or business of providing to unrelated persons services consisting of the transportation of persons or property for compensation or hire", see sec. 280F(d)(4)(C), petitioner would be subject to the strict substantiation requirements of sec. 274(d). Petitioner, however, has failed to show he meets the substantiation requirements of sec. 1.6001-1(a) and (e), Income Tax Regs., or to provide any basis for us to approximate a deduction under Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). Perforce he does not satisfy the stricter substantiation requirements of sec. 274(d).

"qualifying relative". Secs. 151(c), 152(a). To be a taxpayer's "qualifying child", an individual must: (1) Bear a qualifying relationship to the taxpayer; (2) have the same principal place of abode as the taxpayer for more than one-half of the taxable year; (3) meet certain age requirements; and (4) have not provided over one-half of his or her own support for the year. Sec. 152(c)(1).

There is no dispute that petitioner's nieces, born in 2004 and 2006, each satisfy the relationship requirement and the age requirement to be a "qualifying child". See sec. 152(c)(2)(B), (3)(A)(i). We are satisfied that the nieces meet the principal place of abode requirement because R.D. resided with petitioner at his residence during 2005, 2006, and 2007, and S.D. resided with petitioner at his residence following her birth in 2006. It appears self-evident that R.D. and S.D., one a toddler and the other an infant, did not provide more than one-half of their own support during any year at issue. Consequently, petitioner is entitled to dependency exemption deductions for his two nieces.

IV. Head of Household Filing Status

Section 1(b) grants a special tax rate for any individual who qualifies as a head of household. With exceptions not relevant here, the statute generally defines a head of household as an unmarried individual who maintains as his or her home a

household which constitutes for more than one-half of the taxable year the principal place of abode of either a qualifying child (as defined in section 152(c)) or a dependent of the taxpayer with respect to whom the taxpayer is allowed a deduction under section 151.  Sec. 2(b)(1)(A).  For this purpose, an individual is considered to maintain a household only if he or she furnishes over one-half of the cost of maintaining the household during the taxable year.  Sec. 2(b)(1).

In order for the Court to determine whether the taxpayer provided over one-half of the cost of maintaining the household, the taxpayer must prove the total cost of maintaining the household.  See Rosen v. Commissioner, T.C. Memo. 1994-40. Costs of maintaining a household include "property taxes, mortgage interest, rent, utility charges, upkeep and repairs, property insurance, and food consumed on the premises."  Sec. 1.2-2(d), Income Tax Regs.

The record is inconclusive as to whether petitioner was unmarried during the years at issue.  But even if he were unmarried, he is not entitled to head of household status because he has not established that he provided over one-half of the cost of maintaining the household.  Petitioner provided inadequate records to establish the total cost of maintaining the household or his own contribution to the total cost.  In a document in evidence dated May 14, 2008, and captioned "Attestation",

petitioner's brother attested that he worked for an international bank in the Republic of Guinea, that he provided financial help to petitioner whenever it was necessary, that he assisted him in paying bills and in buying his house, and that his wife and children stayed with petitioner at the brother's own expense. The record is otherwise silent as to the amount of the brother's contributions. Petitioner has failed to show that he provided over one-half of the cost of maintaining the household. We sustain respondent's determination as to this issue.

V.  Section 6662(a) Penalty

Respondent determined that for each year at issue petitioner is liable for an accuracy-related penalty pursuant to section 6662(a) and (b)(1) and (2) for negligence or substantial understatement of income tax. Respondent bears the burden of production with respect to this penalty. See sec. 7491(c). To meet this burden, respondent must produce evidence establishing that it is appropriate to impose this penalty. Once respondent has done so, the burden of proof is on petitioner to show that the penalty does not apply. See Higbee v. Commissioner, 116 T.C. 438, 449 (2001).

Negligence includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws and is the failure to exercise due care or the failure to do what a reasonable and prudent person would do under the circumstances.

Sec. 6662(c); <u>Neely v. Commissioner</u>, 85 T.C. 934, 947 (1985); sec. 1.6662-3(b)(1), Income Tax Regs. Negligence also includes any failure by the taxpayer to keep adequate books and records or substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. Petitioner exhibited a lack of due care in failing to report gross receipts, to keep adequate books and records, and to properly substantiate claimed deductions. Respondent has carried his burden of production with respect to the section 6662(a) penalties for negligence.

Section 6662(a) and (b)(2) imposes a 20-percent accuracy-related penalty on any portion of a tax underpayment that is attributable to any substantial understatement of income tax, defined in section 6662(d)(1)(A) as an understatement that exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. The exact amounts of petitioner's underpayments will depend upon the Rule 155 computations, in accordance with our findings and conclusions. To the extent that those computations establish, as seems likely, that petitioner has substantial understatements of income tax, respondent has also met his burden of production in this regard. See <u>Prince v. Commissioner</u>, T.C. Memo. 2003-247.

The accuracy-related penalty does not apply with respect to any portion of the underpayment for which it is shown that the taxpayer had reasonable cause and acted in good faith. Sec.

6664(c)(1).  Petitioner has made no attempt to explain his failure to report gross receipts, to keep adequate books and records, and to substantiate items properly.  We hold that for each year at issue petitioner is liable for a section 6662(a) penalty for negligence and, alternatively, for substantial understatements of income tax insofar as the Rule 155 computations show substantial understatements.

To reflect the foregoing,

Decision will be entered under Rule 155.