T.C. Memo. 2014-151

UNITED STATES TAX COURT

JOSEPH PEERY AND DAWN SHANNON CHAPEL, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 600-12.                                    Filed July 29, 2014.

<u>Daniel J. Picard</u>, for petitioners.

<u>Edward Lee Walter</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  Respondent determined an $18,369 deficiency in petitioners' 2008 Federal income tax and a $3,673.80 accuracy-related penalty under section 6662(a).[1]  The issues for decision are:  (1) whether a $63,500

---

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

**[*2]** payment Joseph Peery (petitioner) made to Katrina H. Peery (Ms. Peery) on July 23, 2008, was alimony or a property settlement; and (2) whether petitioners are liable for an accuracy-related penalty under section 6662(a) for a substantial understatement of income tax.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Petitioners resided in Ohio at the time they filed their petition.

Petitioner married Ms. Peery on May 21, 1971. Ms. Peery was granted a divorce from petitioner on June 9, 2008, pursuant to a decree of divorce issued by the Court of Common Pleas, Richland County, Ohio, Division of Domestic Relations (Court of Common Pleas). The Court of Common Pleas incorporated into the decree of divorce a separation agreement entered into between petitioner and Ms. Peery. The separation agreement, dated June 6, 2008, addressed numerous issues, including the division of marital assets and spousal support to be paid by petitioner to Ms. Peery.

---

[1](...continued)
Revenue Code (Code) in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]** Paragraph 1 of the separation agreement sets forth certain items of "property" that Ms. Peery "shall have as her own, free and clear of all claims of * * * [petitioner]." As part of her property rights, subparagraph 1(I) of the separation agreement assigns to Ms. Peery "[a]n award of property settlement in the sum of $63,500.00, which amount shall be paid within thirty (30) days" of June 6, 2008. Further, in order to "equalize the division of marital assets" between petitioner and Ms. Peery, paragraph 5 of the separation agreement provides Ms. Peery with an additional property settlement of $85,723.

Paragraph 2 of the separation agreement provides that "spousal support" is to be paid by petitioner to Ms. Peery "until such time as she remarries, is deceased or * * * [petitioner] is deceased." Paragraph 2 of the separation agreement states, in relevant part:

> A. Spousal support shall be equal to 40% of all income earned by * * * [petitioner]. Income shall include, but not be limited to the following:
>
> > 1. All wages and/or renumeration [sic] for employment. Such wages, for the purposes of calculating amounts due as spousal support shall not be reduced for any voluntary or mandatory deductions for contributions to retirement plans or deferred compensation plans, taxes (except as provided hereinafter in this paragraph) health insurance premiums or other deductions. Provided, however, mandatory deductions from income for Social Security, Medicare taxes, city income and school district taxes

[*4] shall be deducted in arriving at the income amount to be utilized for the support calculation.

2. All net self-employment income earned as a director, consultant, advisor, speaker or income for honorarians [sic], or any other form of self-employment income earned as an independent contractor.

3. All guaranteed payments or other income from past-through [sic] tax entities, including, but not limited to, partnerships, Sub-Chapter S Corporations, or limited liabilities companies or any other self-employment income.

Furthermore, paragraph 4 of the separation agreement assigns petitioner various properties, including:

E. All financial institution accounts in his individual name.

F. All right, title and interest * * * [petitioner] owns in the following legal entities, to wit:

(1) Hamilton Safe Company - 2 shares
(2) Hamilton Finetech Electronics - 15 shares
(3) K/H Enterprises, Inc. - 5 shares
(4) Hamilton Systems, Inc. - 9 shares

Petitioner married Dawn Shannon Chapel after his divorce from Ms. Peery. Throughout the 2008 tax year, petitioner made various payments from his Fifth Third Bank checking account to Ms. Peery. On each check petitioner wrote a notation indicating that the payment was for spousal support. From January to July 2008 petitioner made payments to Ms. Peery as follows:

| [*5] | Check No. | Date | Amount |
|------|-----------|------|--------|
| | 1017 | 1/10/2008 | $4,300.00 |
| | 1019 | 2/14/2008 | 4,300.00 |
| | 1025 | 3/10/2008 | 4,300.00 |
| | 1027 | 4/14/2008 | 4,300.00 |
| | 1031 | 5/15/2008 | 4,300.00 |
| | 1033 | 6/15/2008 | 4,944.33 |
| | 1039 | 7/23/2008 | 321.34 |
| | Total | | 26,765.67 |

In addition to the above payments, petitioner wrote a $63,500 check--check No. 1040--payable to Ms. Peery and dated July 23, 2008. The words "Spousal Support" are crossed out from the handwritten notation on the check. The total of all foregoing payments is $90,265.67,[2] and represents the amount of deductible alimony petitioners claimed on their 2008 Federal income tax return.

Although not claimed by petitioners as alimony in their 2008 tax return, petitioner paid to Ms. Peery $3,761 by check dated September 2, 2008. The $3,761 check bears an electronic notation "SPOUSAL SUPPORT".

On November 5, 2008, the Court of Common Pleas issued a qualified domestic relations order pursuant to the separation agreement, directing National

---

[2]There is a $1.67 discrepancy between the amount petitioners claimed on their 2008 tax return ($90,264) and the total of checks 1017, 1019, 1025, 1027, 1031, 1033, 1039, and 1040 ($90,265.67). Petitioners did not explain this discrepancy.

[*6] Financial Services, the trustee of petitioner's individual retirement account (IRA), to transfer $85,723 to Ms. Peery from petitioner's IRA.

Petitioners timely filed their 2008 Federal income tax return. On the return, petitioners claimed a deduction from gross income of $90,264 for alimony paid to Ms. Peery during the 2008 tax year.

On October 12, 2011, respondent issued to petitioners a notice of deficiency for 2008.[3] Petitioners timely filed a petition disputing the determinations in the notice of deficiency.

OPINION

As a general rule, the Commissioner's determinations in the notice of deficiency are presumed correct, and the taxpayers bear the burden of proving that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and the taxpayers bear the burden of proving that they are entitled to the claimed deductions. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice, Co. v. Helvering, 292 U.S. 435, 440 (1934).

[3]In the notice of deficiency, respondent also made a $687 adjustment to petitioners' 2008 income tax return. The parties stipulate that this adjustment is "computational in nature" and therefore is not at issue in the instant proceeding.

**[*7]** 1.  Property Settlement/Alimony

The primary issue is whether petitioner's payment of $63,500 to Ms. Peery on July 23, 2008, was alimony or a property settlement.  Petitioners contend that the payment is alimony and thus properly deductible against their 2008 gross income.  Respondent argues that the payment to Ms. Peery does not meet the Code's definition of alimony.

Section 215(a) allows an individual taxpayer a deduction for alimony or separate maintenance payments paid during the taxpayer's taxable year.  For purposes of section 215, "'alimony or separate maintenance payment' means any alimony or separate maintenance payment (as defined in section 71(b)) which is includable in the gross income of the recipient under section 71."  Sec. 215(b).

Section 71(b)(1) sets forth a four-pronged inquiry for determining whether a payment constitutes alimony or separate maintenance.  Section 71(b)(1) provides:

> (1) In general.--The term "alimony or separate maintenance payment" means any payment in cash if--
>
> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>
> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

**[*8]**   (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

"The foregoing requirements are conjunctive; a payment is deductible alimony only if all four requirements of section 71(b)(1) are satisfied." Sa'd v. Commissioner, T.C. Memo. 2012-348, at *9.

Respondent concedes that the $63,500 payment to Ms. Peery satisfies the provisions of section 71(b)(1)(C) and (D).  However, respondent argues that the payment does not meet the requirements set forth in section 71(b)(1)(A) and (B). In order to resolve this dispute, we need only determine whether the payment at issue fails to satisfy one of the four requirements set forth in section 71(b)(1). Accordingly, our determination of whether the payment at issue is deductible as alimony under section 215 will begin with an analysis under the requirement of section 71(b)(1)(B).

Section 71(b)(1)(B) provides that, in order to be considered deductible alimony, "the divorce or separation instrument does not designate such payment as

**[*9]** a payment which is not includible in gross income under this section and not allowable as a deduction under section 215". Generally, property settlements incident to a divorce are not taxable events and do not give rise to deductions or recognizable income. See sec. 1041; Estate of Goldman v. Commissioner, 112 T.C. 317, 323 (1999), aff'd without published opinion, 242 F.3d 390 (10th Cir. 2000); Springer v. Commissioner, T.C. Memo. 2003-221, 2003 Tax Ct. Memo LEXIS 220, at *13; Zampini v. Commissioner, T.C. Memo. 1991-395, 1991 Tax Ct. Memo LEXIS 460, at *11. Respondent argues that the $63,500 payment is a property settlement. Petitioners argue that the payment constitutes alimony.

The plain language of the separation agreement states that petitioner was obligated to make a $63,500 payment to Ms. Peery as a property settlement. The separation agreement addresses two distinct categories: (1) a division of marital assets as a property settlement, and (2) an ongoing obligation on behalf of petitioner to provide spousal support to Ms. Peery. Paragraph 1 of the separation agreement includes nine provisions detailing "property" that Ms. Peery will "have as her own, free and clear of all claims of * * * [petitioner]". The provision requiring the payment of $63,500 from petitioner to Ms. Peery is among these nine provisions, located in subparagraph 1(I) of the separation agreement, alongside other marital property assigned to Ms. Peery. Moreover, subparagraph 1(I)

[*10] specifically states that the $63,500 payment is "[a]n award of property settlement". (Emphasis added.)

Furthermore, the $63,500 lump-sum payment on July 23, 2008, is the exact amount of the property settlement specified in the separation agreement. Unlike petitioner's continuing obligation to make periodic spousal support payments, the $63,500 payment appears as a one-time transaction that was required to be paid within 30 days of the execution of the separation agreement.[4] This payment is consistent with petitioner's obligation to make a $63,500 payment on one isolated occasion, within a condensed timeframe subsequent to the termination of marriage. See Hopkinson v. Commissioner, T.C. Memo. 1999-154, 1999 Tax Ct. Memo LEXIS 189, at *12-*14.

Petitioners nevertheless contend that the $63,500 property settlement mandated by the separation agreement had been paid to Ms. Peery in another transaction, and that the $63,500 payment made on July 23, 2008, represents a separate and distinct payment of alimony resulting from the sale of petitioner's stock (i.e., Hamilton Safe Co., Hamilton Finetech Electronics, KH Enterprises, and Hamilton Systems, Inc.). Petitioner testified that he paid Ms. Peery the $63,500

---

[4]The $63,500 payment was made on July 23, 2008, which was only 17 days after the date required in the separation agreement.

[*11] property settlement using a U.S. Bank Equiline account held jointly in name by himself and Ms. Peery.  According to the testimony of petitioner, the July 23, 2008, check for $63,500 was not in satisfaction of the property settlement detailed in the separation agreement, but rather arose from his ongoing obligation of spousal support (i.e., 40% of the long-term capital gain resulting from the sale of his employee stock).

In support of their contention, petitioners provided a U.S. Bank Equiline account statement showing a transaction summary from May 2008 to January 2010.  The transaction summary shows a principal account balance of $56,405.88 as of December 31, 2009, and numerous monthly payments in 2008, including:

| Date | Description | Amount |
|------|-------------|--------|
| 5/25/08 | Automatic Payment | $248.36 |
| 6/25/08 | Automatic Payment | 246.94 |
| 7/25/08 | Automatic Payment | 245.52 |
| 8/25/08 | Automatic Payment | 244.08 |
| 9/25/08 | Automatic Payment | 242.67 |
| 10/25/08 | Automatic Payment | 241.28 |
| 11/25/08 | Automatic Payment | 239.86 |
| 12/25/08 | Automatic Payment | 238.36 |
| Total | | 1,947.07 |

The U.S. Bank Equiline account statement provides no support for petitioners' position.  Although the separation agreement required petitioner to pay

- 12 -

[*12] a property settlement of $63,500 to Ms. Peery before July 6, 2008, the monthly payments shown on the U.S. Bank Equiline account statement occurring before July 6, 2008, total a mere fraction of the amount petitioner was required to pay. Furthermore, it is impossible to determine whether the automatic payments listed on the account statement were provided to Ms. Peery in satisfaction of the property settlement. Accordingly, petitioners have failed to prove that an earlier payment of $63,500 was made to Ms. Peery in satisfaction of petitioner's property settlement obligation.

We find that the $63,500 payment is a property settlement, not alimony. Accordingly, the payment does not satisfy the requirement set forth in section 71(b)(1)(B), and therefore is not deductible as alimony from petitioners' 2008 gross income under section 215.

Petitioners also contend that the $3,761 check from petitioner to Ms. Peery, dated September 2, 2008, is deductible alimony. Although the $3,761 payment was not claimed as a deduction on their 2008 tax return, petitioners raised this issue (1) in their petition to this Court, (2) at trial, and (3) in their brief. Nowhere does respondent specifically dispute that petitioner wrote the $3,761 check to Ms. Peery or that this amount is alimony. Respondent addresses the $3,761 payment in his brief as follows:

[*13] 24. On September 2, 2008, the petitioner made an additional claimed spousal support payment to Katrina Peery through Fifth Third Bank totaling $3,791.00 [sic], which amount was not claimed as alimony on the petitioner's 2008 Federal Income Tax Return, but which was claimed at trial and included in the total amounts in the petitioners' Trial Memo.

25. The petitioner wrote notations in the Memo field on all checks, except for the September check for $3,791.00 [sic], which he gave to Katrina Peery and claimed as alimony. He wrote the month, year and the divorce proceeding case number and the notation of "spousal support".
[Citations omitted.]

Respondent, however, does not specifically address the $3,761 payment or explain why petitioners are not entitled to deduct this amount as alimony.[5] The $3,761 check bears the electronic notation "SPOUSAL SUPPORT". Accordingly, based on the record before us, there is nothing to contradict petitioner's testimony that the $3,761 payment is deductible to petitioners as alimony. We find that the $3,761 payment is deductible alimony.

2. Accuracy-Related Penalty

Respondent determined that petitioners are liable for a section 6662(a) accuracy-related penalty of $3,673.80 for the 2008 tax year.[6] Section 6662(a) and

---

[5]In his brief respondent concludes that "petitioner did not make deductible alimony payments in excess of $26,766.00 during 2008."

[6]In their brief petitioners do not address the sec. 6662(a) accuracy-related
(continued...)

**[*14]** (b)(1) and (2) permits the application of an accuracy-related penalty in the amount of 20% to any portion of an underpayment which is attributable to, among other things, negligence or intentional disregard of the rules or regulations or any substantial understatement of income tax. A substantial understatement of income tax exists when a taxpayer's understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

The Commissioner bears the burden of production concerning the imposition of penalties and must provide sufficient evidence indicating that it is appropriate to impose the penalty. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the Commissioner satisfies his burden of production, the burden of proof remains with the taxpayers, including the burden of proving that the penalty is improper due to reasonable cause. Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447.

Petitioners' deficiency in income tax for the taxable year 2008 is $18,369. Even with the allowance of an additional deduction of $3,761 as alimony,[7] the

---

[6](...continued)
penalty.

[7]The $3,761 alimony deduction will need to be reflected in the parties' Rule

(continued...)

[*15] understatement of income tax exceeds the greater of 10% of the tax required to be shown on petitioners' return or $5,000. Therefore, petitioners' understatement is substantial. Respondent has met his burden of production by showing that petitioners improperly deducted from their 2008 gross income the property settlement of $63,500. See Bronstein v. Commissioner, 138 T.C. 382, 387-388 (2012).

Section 6664(c)(1) provides that the penalty under section 6662(a) shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayers' position and that the taxpayers acted in good faith with respect to that portion. See Higbee v. Commissioner, 116 T.C. at 448. The determination of whether the taxpayers acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Petitioners have the burden of proving that the penalty is inappropriate because of reasonable cause under section 6664. See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447. Petitioners have failed to prove that the penalty is inappropriate because of reasonable cause. Accordingly, we hold that petitioners are liable for the

---

[7](...continued)
155 computations.

**[*16]** accuracy-related penalty under section 6662(a) for their substantial underpayment of tax for the 2008 tax year.

In reaching our decision, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.